HORACE MANN INSURANCE COMPANY, Plaintiff,

v.

Sean JOHNSON, By and Through his parents and legal guardians, Rudy JOHNSON and Susan Johnson, individually; and Candy Crittenden, Defendants.

No. CIV–90–1637–A.

United States District Court,
W.D. Oklahoma.

Feb. 28, 1991.

Mort G. Welch, Abowitz & Welch, Oklahoma City, Okl., for plaintiff.

Danny B. Nichols, Midwest City, Okl., and Ronald A. Schaulat, Michael H. Brady, Oklahoma City, Okl., for defendants.

## ORDER

ALLEY, District Judge.

Pending before the Court are 1) Plaintiff's Motion to File First Amended Complaint, 2) Motion of Defendants Johnson to Dismiss, and 3) Default Judgment as to defendant Candy Crittenden. The action is one for declaratory judgment filed pursuant to 28 U.S.C. § 2201, *et seq.* Jurisdiction of the Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The plaintiff, Horace Mann Insurance Company ("Horace Mann") seeks a declaration of nonliability under a Mobile Homeowners Insurance Policy with respect to personal coverage for defendant Candy Crittenden. The issue of insurance coverage arises from a negligence action alleging injuries to defendant Sean Johnson while defendant Crittenden was babysitting with him; and it concerns specifically whether babysitting was a "business activity" excluded for coverage under the policy in question.

On January 3, 1991, the Court directed briefing by the parties regarding the implications of a declaration of rights herein under *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in view of the Oklahoma statutory prohibition found in Okla.Stat.Ann. tit. 12, § 1651 (West 1980), which provides in pertinent part:

> District courts may, in cases of actual controversy, determine rights, status, or other legal relations, ... whether or not other relief is or could be claimed, *except that no such declaration shall be made* concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment ... or *concerning obligations alleged to arise under policies of insurance covering liability or indemnity against liability for such injuries.* (Emphasis supplied.)

Both plaintiff and defendants have responded, reporting the Tenth Circuit Court of Appeals decision in *Farmers Alliance Mutual Insurance Co. v. Jones,* 570 F.2d 1384 (10th Cir.1978), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978). In that case, the defendant argued on appeal that Oklahoma's declaratory judgment statute precluded a determination of liability under an automobile policy of insurance; and therefore, such an action was likewise precluded under the federal Declaratory Judgment Act. The appellate court rejected the argument and refused application of the *Erie* doctrine, because declaratory judgment actions under the Oklahoma act "involve procedural remedies and not substantive rights." *Id.* at 1386. The Court reasoned that "one of the primary functions of the [federal] Act is to provide the insurer such a forum [for having its liability declared]," *id.,* and then stated:

> A trial court has discretion to determine whether to entertain a declaratory judgment action and the decision of the trial court will not be overturned unless there is a clear abuse of discretion demonstrated. *Duggins v. Hunt,* 323 F.2d 746 (10th Cir.1963). No such abuse occurred here.

*Id.* Ever after, attorneys representing insurance companies have filed their cases to determine liability or nonliability under policies of insurance in the federal district courts of this State, effectively circumventing the public policy of the State of Oklahoma as pronounced by the legislature.

These cases have of late become so common a genre of litigation in this judicial district that review and analysis of the *Farmers Alliance* case is in order.

■ First, it is clear from *Farmers Alliance* that the *Erie* doctrine does not foreclose such litigation in Oklahoma federal courts. Conversely, nothing in *Farmers Alliance requires* a declaration of rights under these circumstances. The circuit's holding that the trial court did not abuse discretion in proceeding under the federal Act does not appear to abrogate a Court's discretion built into the Act. As is stated in *Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir.1963):

> The grant of jurisdiction contained in the Act is not one of compulsion and the court has the discretion whether to entertain an action for declaratory relief. (citations omitted) The questions of when to exercise jurisdiction, when to hold jurisdiction in abeyance, and when to reject jurisdiction are to be determined initially by the trial court, (citation omitted), and the judgment of the trial court will be reviewed by this court only to consider whether a clear abuse of discretion appears.

*See also Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1273 (10th Cir.1989) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

In Oklahoma, where State courts are statutorily precluded from declaring the liability or nonliability of parties under policies of insurance for alleged tortious injuries, the federal district courts *must* consider principles of comity. To "give effect to the laws and judicial decisions of another ... jurisdiction, not as a matter of obligation, but out of deference and mutual respect," *Brown v. Babbitt Ford, Inc.*, 117 Ariz. 192, 571 P.2d 689, 695 (App.1977), is a judicious exercise of discretion.[1]

■ There are circuit courts that review a decision to afford or not to afford declaratory relief by substituting their judgment for that of the trial court. *See, e.g., Cincinnati Insurance Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir.1989) ("The scope of appellate review of the exercise of such discretion [under the Declaratory Judgments Act] ... allows the appellate court to substitute its judgment for that of the trial court"); *Tempco Elec. Heater Corp. v. Omega Eng'r, Inc.*, 819 F.2d 746, 747–49 (7th Cir.1987) (decision to grant declaratory relief reviewable *de novo*). In the courts of this circuit, however, it is clear that the standard by which such a decision is reviewed is one of abuse of discretion. As is unequivocally stated in *Kunkel v. Continental Casualty Co., supra*, at 1273:

> In a declaratory judgment action "our inquiry is two-fold. A determination of the district court's subject matter jurisdiction is a question of law reviewable *de novo* on appeal. (citation omitted) The decision of the district court to affirmatively exercise its discretion and issue a declaration under the Act in the presence of jurisdiction, however, will not be overturned absent a showing of clear abuse of discretion. (citations omitted)

■ The public policy of the State of Oklahoma has been manifestly expressed in the prohibition of declarations such as the one sought of this Court. As is stated in *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943), "[i]t is in the public interest that federal courts ... should exercise their discretionary power to grant or withhold [declaratory] relief so as to avoid needless obstruction of the domestic policy of the states."[2] It is, indeed,

---

**1.** It is stated in *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir.1990):

> An abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical. *See United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987). Other evidence of such abuse would include manifestly unreasonable judgment, prejudice,

bias or ill will which is ascertainable from the record. *See id.*

**2.** In the *Great Lakes* case, the Supreme Court reviewed whether a federal declaratory judgment was appropriate with regard to a substantive tax law of the State of Louisiana. While the law at issue here is procedural in nature, the

an affront to principles of federalism and comity that an insurer's attorney, expressly incapacitated from filing a lawsuit in the State courthouse on the corner of Park & Hudson—the primary court in this county through which Oklahoma asserts its sovereignty—can do so by walking to the federal courthouse at Fourth & Robinson. To deny this practice is, to this judge, no abuse of discretion. If on the other hand federal district courts in the State of Oklahoma *must* entertain any and all such cases, it must be pursuant to some explicit or implicit positive rule of law promulgated at the appellate level that does not admit of discretion. None has been found.

The primary point is this: No federal interest is implicated in this litigation.

While declaratory judgments under Oklahoma law are not available in these circumstances,[3] other means by which an insurer may seek to vindicate its position as to lack of coverage exist. To allow these suits for declarations in the federal forum results in a discrimination limiting such relief to those able to invoke diversity jurisdiction, a situation where the federal district court, for all practical purposes, sits only as another court of the State. In *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), the United States Supreme Court considered an argument of res judicata in a federal diversity action for deficiency, where the North Carolina Supreme Court had previously ruled that a statute of that State barred actions for deficiency judgment. The statute had been ruled by the North Carolina court to pertain "to the practice and procedure or legal machinery by which the substantive law is made effective, and not upon the substantive law itself." *Id.* at 187–188, 67 S.Ct. at 659–60. The United States Supreme Court found the North Carolina Supreme Court's decision to be res judicata in the federal district court, and stated in explanation as follows:

> The essence of diversity jurisdiction is that a federal court enforces State law and State policy. If North Carolina has authoritatively announced that deficiency judgments cannot be secured within its borders, it contradicts the presuppositions of diversity jurisdiction for a federal court in that State to give such a deficiency judgment. North Carolina would hardly allow defeat of a State-wide policy through occasional suits in a federal court. What is more important, diversity jurisdiction must follow State law and policy. A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld. *Availability of diversity jurisdiction which was put into the Constitution so as to prevent discrimination against outsiders is not to effect discrimination against the great body of local citizens.* (emphasis supplied)

*Id.* at 191–192, 67 S.Ct. at 662.

Finally, the rationale behind *Burford* abstention, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which is "concerned with preventing the disruption 'of state efforts to establish a coherent policy with respect to a matter of substantial public concern,'" *Grimes v. Crown Life Insurance Co.*, 857 F.2d 699, 707 (10th Cir.1988), *cert. den.*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989), is instructive in these circumstances. Oklahoma comprehensively regulates the insurance industry. The bar against State-court declaratory judgment actions on coverage issues is part of the regulatory fabric. One may agree or disagree with the reasons behind the bar, but

---

Supreme Court's dicta would appear just as efficacious in this instance.

**3.** The Court here distinguishes circumstances giving rise to the Supreme Court's dicta in *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 674, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950), "that [the fact that] the declaratory remedy which may be given by the federal courts is not available in the state courts is immaterial." The

*Skelly Oil* case arose prior to enactment of Oklahoma's Declaratory Judgment Act. The Supreme Court was commenting on the absence of any declaratory remedy in Oklahoma. That situation is not equivalent to present circumstances, where the remedy is generally available, but application of the remedy in cases such as the one under consideration today is expressly prohibited in firm expression of state policy.

certainly the intended effect of the bar is to "handicap the horses" in insurer-insured coverage disputes. The handicap operates against insurers primarily. Because the bar forecloses a declaratory preemption of the issue, insurers are placed at greater peril when they deny coverage. Inevitably, federal court intervention disturbs the calculations of benefit and detriment underlying state regulation of the industry.

Accordingly, the Court, in its discretion, and in recognition of principles of federalism and comity, hereby dismisses this case with prejudice to refiling in this Court.

It is so ordered.